Henry E. PHILLIPS, Appellant,

v.

PARKE, DAVIS & COMPANY, Deseret Medical Co., Appellees.

No. 88–2080.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided March 7, 1989.

Rehearing and Rehearing En Banc Denied April 12, 1989.

Robert S. Blatt, Fort Smith, Ark., for appellant.

G. Alan Wooten, Fort Smith, Ark., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,* District Judge.

McMILLIAN, Circuit Judge.

Henry E. Phillips appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas upon a jury verdict finding in favor of Parke, Davis & Co. and Deseret Medical Co. (collectively referred to as Parke Davis) on

---

* The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

Phillips' claim that Parke Davis manufactured a defective, unreasonably dangerous product; was negligent; and breached implied and express warranties. For reversal, Phillips argues that the district court erred in (1) instructing the jury on the defense of intervening cause and (2) denying his alternative motions for judgment notwithstanding the verdict (jnov) or a new trial. For the reasons discussed below, we affirm the judgment of the district court.

On February 28, 1986, Henry E. Phillips was hospitalized at Sparks Regional Medical Center in Fort Smith, Arkansas, for treatment of a pancreatic abscess. Phillips was critically ill, and on March 3, 1986, he underwent surgery for treatment of his condition. As a result of his illness and treatment thereof, Phillips had to be fed intravenously. A subclavian jugular catheter manufactured and distributed by Parke Davis was used on Phillips in the intravenous procedure known as hyperalimentation.

On April 17, 1986, the catheter separated at the juncture of the hinged snap-on adapter and the cannula of the catheter, allowing air to enter the catheter. Phillips suffered an air embolus, resulting in brain damage and a probable stroke. Later on during his hospitalization, an abscess developed on the left side of Phillips' brain. The medical testimony was equivocal on whether the air embolus had caused his brain abscess.

Phillips' permanent injuries include mild paralysis and loss of coordination in his right arm. He also suffers from marked clumsiness and weakness as well as sensory loss in his left leg.

Phillips brought this diversity action in federal district court alleging strict products liability, negligence, and breach of warranty under Arkansas state law. Before the case was submitted to the jury, an instruction conference was held at which time the district court judge distributed a packet of proposed jury instructions to counsel and asked for specific objections. Included in the packet was Arkansas Model Jury Instruction (AMI) 503 which states:

Defendant contends and has the burden of proving that following any act or omission on his part an event intervened which in itself caused damage completely independent of his conduct. If you so find, then his act or omission was not a proximate cause of any damage resulting from the intervening event.

Phillips' counsel did not object to the inclusion of AMI 503 in the instruction packet and concedes that he did not "specifically carefully enough [sic] read through the packet ... to find this instruction."

Counsel for Parke Davis asked during the instruction conference if the district court intended to give AMI 503. The district court replied in the negative because, in its estimation, the issue of intervening cause was not in the case. According to the district court, any evidence of misuse by doctors installing the catheter was evidence of foreseeable misuse which, under Arkansas law, is not an intervening cause.

Despite its ruling on this matter, the district court inadvertently read AMI 503 to the jury because it had been included in the packet of proposed instructions, none of which had been objected to by Phillips' counsel. Phillips' counsel was present when the instructions were read to the jury and also failed to object to AMI 503 at that time. After the jury had deliberated for about two hours, the district court discovered its mistake and informed counsel. Phillips' counsel asked the district court to recall the jury and withdraw the instruction while counsel for Parke Davis argued that the jury would only be confused by such an act.

After hearing the arguments of counsel, the district court ruled that it would not withdraw the instruction. It based its ruling on the fact that Phillips' counsel had two opportunities to object to submission of AMI 503 to the jury and had failed to do so. The district court also ruled that by requesting Instruction 28A, Phillips' counsel had injected the issue of intervening cause into the case and therefore could not complain that the issue had been improperly submitted. Instruction 28A stated the following:

You are instructed that foreseeable misuse by third parties is not a defense to Henry Phillips' cause of action against the defendants.

Phillips' counsel had, therefore, waived any objection to AMI 503.

The jury returned a verdict on special interrogatories in favor of Parke Davis on all four counts. Phillips moved alternatively for jnov or a new trial on the grounds that the jury was improperly instructed and that the verdict was against the weight of the evidence. The district court denied both motions. This appeal followed.

## JURY INSTRUCTIONS

 Phillips argues that when the district court refused to withdraw the intervening cause instruction, it erroneously allowed the jury to consider an issue that was unsupported by the evidence, thus introducing conflict and confusion into the deliberative process. He contends that he did not waive his objection by remaining silent during both the instruction conference and the reading of the instruction to the jury. Phillips argues that the chronology of events was not as the district court found and that, in fact, the district court first stated that an intervening cause instruction would not be given and then distributed the packet of proposed instructions while asking for specific objections. Phillips maintains that his counsel properly relied on the district court's assurances that AMI 503 would not be given and cannot, therefore, be faulted for failing to object to inclusion of AMI 503 in the instruction packet and to its reading to the jury. We disagree.

 Fed.R.Civ.P. 51 states in pertinent part "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 51 makes it incumbent upon the attorneys in a civil case to ascertain how the jury is to be instructed and to state any objections before the jury retires. Counsel is entitled to rely on no one in discharging this duty. To hold otherwise would be to subvert the

policy underlying the rule. *See Missouri Pacific R.R. v. Star City Gravel, Inc.*, 592 F.2d 455, 459 (8th Cir.1979) (purpose of rule is to require counsel to be certain that trial court is given the opportunity to cure a defect in the instructions prior to submission of the case to jury).

Because Phillips has waived his objection to AMI 503, we are limited to reviewing the instruction under the plain error standard. Under this standard, reversal would be warranted only in "the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of [the] judicial proceedings." *Figge Auto Co. v. Taylor*, 325 F.2d 899, 907 (8th Cir. 1964) (citation omitted). Such is not the case here.

 When read together, AMI 503 and Instruction 28A are a correct statement of Arkansas law on intervening cause. Unforeseeable misuse or negligence is a defense to an action in strict liability, negligence, or warranty while foreseeable misuse or negligence is not. *Elk Corp. v. Jackson*, 291 Ark. 448, 725 S.W.2d 829, 833–34 (1987) (negligence); *Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1, 10–11 (1980) (breach of warranty). Even though the district court was of the opinion that there was no evidence presented of unforeseeable misuse, giving AMI 503 to the jury did not seriously affect the fairness or integrity of the trial because Instruction 28A informed the jury that foreseeable misuse was no defense. The district court did not, therefore, commit plain error in including AMI 503 in its instructions to the jury.

## JNOV OR NEW TRIAL

Phillips next argues that the district court erred in denying his alternative motions for jnov or new trial because the verdict was against the clear weight of the evidence. We disagree.

 Phillips bases his argument primarily on his contention that only he presented expert testimony on subclavian jugular catheters. His expert, Dr. Allen E. Yeakel, testified that the catheter manufactured by

Parke Davis and used on Phillips was defectively designed and was the cause of Phillips' injuries. While conceding that the trier of fact is not bound by uncontradicted expert testimony, Phillips argues that when the jury decided in this case, it acted arbitrarily. *Compare Mopkins v. St. Louis Die Casting Corp.*, 569 F.2d 454, 455 (8th Cir.1978) (district court not bound by expert's testimony), *with United States v. 3,727.91 Acres of Land*, 563 F.2d 357, 362 (8th Cir.1977) (uncontradicted expert testimony improperly rejected), *and NLRB v. Klaue*, 523 F.2d 410, 414 (9th Cir.1975) (trier of fact may not reject uncontradicted testimony "without good reason").

Contrary to Phillips' assertion, expert testimony was presented on behalf of Parke Davis that supported its position that the catheter was not defectively designed. Dr. David Dante, an emergency room physician, testified that he had used the model of catheter in question for years and that it was safe and well-suited for its intended purposes. Mr. Silas Smith, a retired employee of Deseret Medical, Inc., testified during Phillips' case in chief that he did everything in his power to make sure that a quality product was put on the market and that he never had any knowledge that the subclavian catheter manufactured by Parke Davis was defective.

The evidence presented in this case was such that different inferences could be drawn from it by reasonable persons. *See Brown v. Syntex Laboratories, Inc.*, 755 F.2d 668, 671 (8th Cir.1985). We are satisfied that substantial evidence was presented that supports the verdict, *see Tackett v. Kidder*, 616 F.2d 1050, 1053 (8th Cir.1980), and that a miscarriage of justice will not result from allowing the verdict to stand, *see Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

Accordingly, the judgment of the district court is affirmed.